**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICARDO VAZQUEZ, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| *Plaintiff,* | ) | Case No. 2:24-cv-589 |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES STEEL CORPORTION, | ) | |
| | ) | |
| *Defendant.* | ) | **JURY TRIAL DEMANDED** |
| | ) | |

<u>**COMPLAINT IN CIVIL ACTION**</u>

Plaintiff, Ricardo Vazquez (hereinafter, "<u>Plaintiff</u>"), by and through the undersigned counsel, files the within Complaint in Civil Action against Defendant, United States Steel Corporation (hereinafter, "<u>Defendant</u>"), averring as follows:

<u>**STATEMENT OF THE PARTIES**</u>

1.      Plaintiff is an adult individual who resides at 109 Fern Way, Glassport, Pennsylvania 15045.

2.      Premised on the facts below, Defendant flagrantly violated Plaintiff's rights protected by the Americans with Disabilities Act, 43ct of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 12101, et seq. (hereinafter, and collectively, the "<u>ADA</u>"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* (hereinafter, "<u>Title VII</u>"); and the Rehabilitation Act of 1973, Pub. 29 U.S.C. § 701, *et seq.*

3.      In 2011, Plaintiff was diagnosed with an auto immune disease, sarcoidosis, in his left lung.  The sarcoidosis is chronic in nature and when triggered, hardens the lining of the lung

which substantially impairs Mr. Vazquez's walking and breathing (hereinafter, the "<u>Sarcoidosis Disability</u>").

4.      During Plaintiff's tenure of employment with Defendant, in or around 2016, Plaintiff injured his shoulder at work while using a jack hammer (hereinafter, the "<u>Accident</u>") resulting in a bicep tear and rotator cuff tear that required three surgical procedures (the "<u>Injury Disability</u>") (hereinafter, the Sarcoidosis Disability and the Injury Disability shall be referred to as the "<u>Disabilities</u>").

5.      In turn, the symptomatic presentations of the Disabilities constitute a physical impairment that substantially limits Plaintiff in the performance of his major life activities including but not limited to, walking, breathing, performing manual tasks and caring for himself.

6.      At all times relevant, Plaintiff was a "qualified individual with a disability" within the purview of the ADA and the PHRA.

7.      The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).  42 U.S.C. § 12102.

8.      Plaintiff possesses a "disability" pursuant to 42 U.S.C. § 12102(A) as he was diagnosed with the Disabilities delineated above.  At all times relevant hereto, the Disabilities impaired Plaintiff's major life activities including severe difficulty concentrating, working, and caring for himself.  Further, Plaintiff's major life activities were impaired through the ways in

which Plaintiff was forced to adapt these activities to minimize the risk of exacerbating the Disabilities.

9.      Defendant is a foreign business corporation, whose domiciled state is Delaware, with business operations located at 400 State Street, Clairton, Pennsylvania 15025.  Defendant's commercial registered agent is Corporation Service Company, located at 2704 Commerce Drive, Suite B, Harrisburg, Pennsylvania 17110.

<u>JURISDICTION AND VENUE</u>

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("<u>Federal Question Jurisdiction</u>") as Plaintiff is advancing claims under the ADA and Title VII (collectively, Plaintiff's claims arising under the ADA and Title VII are identified as the "<u>Federal Law Claims</u>").

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

11.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "<u>Western District</u>") as a substantial part of the events and omissions giving rise to the Federal Law Claims occurred within this judicial district.  Specifically, these events and omissions occurred within Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.  This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny

County, Pennsylvania and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.     This Court May Exercise Personal Jurisdiction Over Defendant through Pennsylvania's Long-Arm Statute and This Exercise of Personal Jurisdiction Comports with the Traditional Notions of Fair Play and Substantial Justice.**

12.     This Court may exercise personal jurisdiction over Defendant as Defendant has the required minimum contacts with this forum for purposes of Pennsylvania's Long-Arm statute codified within 42 Pa. C.S. § 5322.  Further, the exercise of jurisdiction over Defendant by and through Pennsylvania's Long-Arm Statute complies with the traditional notions of fair play and substantial justice required by the Due Process Clause of the Constitution given the "specific jurisdiction" that exists over Defendant.

13.     At the outset, Pennsylvania's Long-Arm statute provides that a tribunal may exercise personal jurisdiction where an individual or entity is "transacting any business in this Commonwealth".  42 Pa.C.S. § 5322.

14.     The following enumerated subsections within 42 Pa. C.S. § 5322(a) define "transacting any business" to include:

> (1)(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an act.
> (1)(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.
> (1)(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.
> (1)(v) The ownership, use or possession of any real property situate within this Commonwealth.
> (3) Causing harm or tortious injury by an act or omission in this Commonwealth
> (5) "having an interest in, using, or possessing real property in this Commonwealth

> (10) committing any violation within the jurisdiction of this Commonwealth of any statue, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

*Id.*

15.     In the instant matter, personal jurisdiction can be found over Defendant under Pennsylvania's Long-Arm Statute for the following reasons:

    a.  Defendant maintains business operations located in Clairton, Pennsylvania, routinely engages in various commercial activities within the Commonwealth of Pennsylvania for the purpose of pecuniary gain; and

    b.  As averred more fully below, Defendant violated numerous statutory provisions of federal and state law and the underlying events giving rise to Defendant's unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania.

16.     This Court's exercise of personal jurisdiction over Defendant by and through Pennsylvania's Long-Arm Statute comports with the Due Process Clause of the Constitution through the "specific jurisdiction" that exists over Defendant as the causes of action complained of herein arise specifically from Defendant's contact with the forum.  U.S. Const. amend XIV, § 1.

17.     The inquiry into whether "specific jurisdiction" exists possesses three parts. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  First, a "defendant 'must have purposefully directed [its] activities' at the forum".  *Id.* quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  Second, the instant litigation must "arise out of or relate to at least one of those activities".  *Id.* quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*,

466 U.S. 408, 414 (1984).  And third, whether the exercise of jurisdiction "'comport[s] with fair play and substantial justice'".  *Id.* quoting *Burger King*, 471 U.S. at 476.

18.     Defendant has engaged in business operations for pecuniary gain within the forum and these business operations were, at all times relevant hereto, intentionally effectuated by the Defendant.  As more thoroughly delineated below, Plaintiff participated in these business operations, through an employment relationship, and correspondingly the Federal Law Claims arise from said relationship.  Further, the Federal Law Claims arose because of these business operations and from the unlawful activity Defendant engaged in occurred within the scope of these operations.

19.     Therefore, personal jurisdiction over Defendant is proper in light of Defendant's consent to personal jurisdiction and Pennsylvania's Long-Arm Statute and Defendant may properly be pursued before this Court.

**D.     Plaintiff has exhausted its administrative remedies and the Federal Law Claims and the State Law Claims are now properly able to be brought before this Court.**

20.     Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court.  Specifically:

  a.  On or about September 21, 2023, Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2023-00753 (the "EEOC Charge") and with the Pennsylvania Human Relations Commission (the "PHRC").

  b.  On January 29, 2024, the EEOC issued the Determination and Notice of Rights (the "DNR") wherein Plaintiff was afforded ninety days within which to timely

file the Federal Law Claims.  A true and correct copy of the DNR is attached hereto, made a part hereof, and identified as **Exhibit A**.  The instant Complaint is filed within the ninety-day time period.

21. Given that the PHRC has not yet concluded its administrative process, Plaintiff intends to amend this complaint to add claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA") upon the PHRC's issuance of correspondence giving notice of a one-year pendency and releasing the same.

## GENERAL ALLEGATIONS

22.     Plaintiff is an adult, disabled, Hispanic male, who is married and who is over forty-seven (47) years of age.

23.     On or about October 7, 2005, Plaintiff commenced his employment with Defendant in the role of "laborer," reporting to Defendant's facility located at 400 State Street, Clairton, Pennsylvania 15025 (hereinafter, the "Clairton Facility"), where he established a record of success in various departments.

24.     Prior to suffering discrimination, Plaintiff last worked for Defendant on a full-time basis, Monday through Friday, 6:00 a.m. to 2 p.m., and earned a regular wage of $23.67. Plaintiff regularly worked overtime and was paid 150% of his regular rate.

25.     As set forth above, in 2011, Plaintiff was diagnosed with the Sarcoidosis Disability.

26.     As set forth above, in 2016, Plaintiff sustained the Injury Disability.

27.     Despite the surgical procedures, Plaintiff continued to suffer a permanent reduced range of motion in his arm due to the Injury Disability.

28.     As a result of the Injury Disability, Plaintiff requested an accommodation and Defendant granted the requested accommodation, placing Plaintiff on "permanent light duty"

(hereinafter, the "Accommodation") in 2017 which included driving trucks, cutting grass and avoiding ladders.

29.     In 2022, Plaintiff was diagnosed with neuropathy, a chronic condition related to Plaintiff's Sarcoidosis Disability that targets the nerves in his feet and substantially impairs his walking.

30.     The symptoms related to Plaintiff's neuropathy worsened in February 2023.

31.     In April of 2020, Defendant targeted and suspended employees with serious health issues, including Plaintiff, under the guise of COVID-19 layoffs.

32.     The suspension was unpaid and effectively revoked Plaintiff's Accommodation.

33.     In August of 2021, suspended employees were called back to work, contingent on them passing a physical.

34.     A nurse practitioner, representing Defendant, examined Plaintiff and declared that he could not return to work with medical restrictions of any kind, even with the Accommodation.

35.     Plaintiff disagreed and requested that he return to work with his prior Accommodation.

36.     Defendant refused Plaintiff's request to return to work with his accommodation and refused to reinstate him.  Plaintiff was not terminated, but indefinitely suspended without pay.

37.     Instead of accommodating Plaintiff, Defendant's medical staff instructed Plaintiff to file for "Sick and Accident," short term disability insurance, (hereinafter, the "S&A") which would provide him with sixty-five (65%) percent of his wages.

38.     Plaintiff applied for and began receiving benefits from the S&A in August of 2021, with his pulmonary physician verifying his claim monthly and advising the carrier, Broadspire Insurance.

8

39.     In November of 2022, Plaintiff assisted a friend with cancer by doing some painting on his house.

40.     At the time, Plaintiff's physician encouraged Plaintiff to stay as mobile and active as possible.

41.     It is believed and averred that someone shot a video of Plaintiff painting.

42.     On or about November 18, 2022, Defendant contacted Plaintiff and served him with a five-day suspension.

43.     The United Steelworkers and union representative, Chris Carpenter (hereinafter, "Mr. Carpenter"), filed a grievance on Plaintiff's behalf.

44.     In December of 2022, Defendant terminated Plaintiff during the Step 1 grievance process after replaying a video of Plaintiff painting and claimed that he was in "Fraudulent receipt of benefits and misrepresenting a physical condition."

45.     The reason offered by Defendant in support of discharge remains a pretext for disability discrimination because Plaintiff is undeniably disabled under the meaning of the ADA, was at all times forthcoming and truthful with Defendant about his Disabilities, was following his doctor's recommendation, and painting for a friend is not an activity that ever involved an accommodation.

46.     Defendant's treatment of disabled persons was inconsistent.  By way of example, Defendant Caucasian employee of Defendant, Tony Foster (hereinafter, "Mr. Foster") was younger than Plaintiff and also on S&A leave while recovering from knee surgery.  Defendant did not investigate Mr. Foster, challenge the validity of his disability, nor issue discipline to him after he was witnessed driving his personal vehicle.

47.     Broadspire Insurance ceased providing benefits to Plaintiff in November of 2022, not as a result of his termination of employment, but due to the conclusion of a two-year benefit term.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF DISABILITIES**
**IN VIOLATION OF THE ADA**
**42 U.S.C. § 1201, *et seq.***

48.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

49.     The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities.  42 U.S.C. § 12101.  Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a).

50.     A private cause of action exists within the ADA where an employee is discriminated against on the basis of their disability.  42 U.S.C. § 12117(a).

51.     To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) they are a disabled person within the meaning of the ADA; (2) they are otherwise qualified to perform the essential functions of their job, with or without reasonable accommodations by the employer; and (3) they suffered an otherwise adverse employment decision as a result of discrimination.  See, *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). As averred previously in this Complaint, Plaintiff sustained and suffered from the Disability and was a disabled person under the ADA.

**A.      Plaintiff is a "Disabled Person" Pursuant to 42 U.S.C. § 12102 of the ADA.**

52.      As established herein, Plaintiff possessed a "disability" under the meaning of the ADA, and correspondingly "disabled" for purposes of establishing his *prima facie* case, given the numerous ways in which the Disabilities substantially impaired his major life activities. Specifically, the Disabilities caused Plaintiff severe difficulties walking, breathing, performing manual tasks, and caring for himself.  Given the far-reaching impact of the Disabilities, Plaintiff's major life activities were substantially impaired both physically by the Disabilities and by the means in which Plaintiff was forced to adapt his major life activities to minimize the risk the Disabilities posed to any such activity.

**B.      Plaintiff is a "Qualified Individual" Pursuant to 42 U.S.C. § 12111 of the ADA and was Qualified to Perform the Essential Functions of His Job With or Without Reasonable Accommodations.**

53.      At all times relevant hereto, Plaintiff was more than qualified for the positions with Defendant as delineated above.  This is evidenced by (i) Plaintiff's receipt of positive performance reviews and promotions; and (ii) Plaintiff's 15-plus-year tenure of employment with Defendant.

54.      Even with the Disabilities, Plaintiff was qualified to perform the job duties of his positions with reasonable accommodation.  For example, Plaintiff could have maintained his position with Defendant had Defendant not revoked the previously authorized Accommodation.

**C.      Plaintiff Suffered an "Adverse Employment Action" as a Result of Disability Discrimination.**

55.      As a direct result of Defendant's disability discrimination, Plaintiff suffered adverse employment actions including, but not limited to, (i) heightened scrutiny subsequent to the COVID-19 layoffs wherein Plaintiff was forced to undergo a physical, the passing of same which was contingent on Defendant's agreement to return Plaintiff to his previous position; (ii)

Defendant's refusal to honor the previously agreed upon Accommodation; and (iii) termination of employment.

56.      Therefore, Defendant violated the ADA in discriminating against Plaintiff because he suffers from the Disabilities.

**D. Plaintiff is Entitled to Pursue Punitive Damages as Defendant Discriminated Against Her with Malice and Reckless Indifference to Her Federally Protected Rights.**

57.      A plaintiff may recover punitive damages where she can demonstrate a defendant, "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1).  The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination".  *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

58.      At all times material, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA.  In discriminating against Plaintiff on the basis of his Disabilities, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

59.      As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only a tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO ACCOMMODATE**
**IN VIOLATION OF THE ADA**
**42 U.S.C. § 1201, *et seq.***

60.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

61.     Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability." *Gaul v. Lucent Technologies Inc.*, 134 F.3d 576, 579 (3d Cir. 1998).  The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

62.     A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

63.     An entity discriminates against an individual on the basis of disability when, inter alia, it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the] entity."  42 U.S.C. § 12112(b)(5)(A).

64.     Reasonable accommodations may include, inter alia, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of

equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

65.     Congress has defined "disability" to mean, "with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1).

66.     The ADA prohibits employers from discriminating against employees for their disabilities. 42 U.S.C. § 12112; 43 Pa. Cons. Stat. § 955. To establish a prima facie case of disability discrimination, an employee must show that she "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).

**A.     Plaintiff is Disabled Under the Purview of the ADA.**

67.     Plaintiff is disabled under the meaning of the ADA with his Disabilities as previously defined herein.

68.     The Defendant had knowledge of Plaintiff's Disabilities, the details of which are set forth herein.

**B.     Plaintiff was a Qualified Individual.**

69.     Plaintiff was at all times a qualified individual as buttressed by his long-term employment of fifteen plus years in various roles wherein he established a record of success.

**C.    Plaintiff Suffered An Adverse Employment Action Due to his Disabilities.**

70.    As set forth above, Defendant did not make the accommodation Plaintiff requested, although it previously had, thereby unilaterally denying the same without engaging in any interactive process whatsoever with Plaintiff. Defendant ignored Plaintiff's request to honor the previously approved Accommodation, to be placed on permanent light duty.  However, Defendant refused.

71.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only a tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY**
**IN VIOLATION OF THE ADA**
**42 U.S.C. § 1201, *et seq.***

72.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

73.    The ADA prohibits employers from retaliating against employees. 42 U.S.C. §12203(a).  Specifically, the ADA states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id*

74. Notably, the case law has held that, in and of itself, retaliation is a separate and distinct unlawful practice of discrimination and, thus, is actionable in its own right and without regard to other instances of discrimination. *See Mandel v. M & Q Packaging Corp.*,706 F.3d 157, 163-64 (3d Cir. 2013); see *Mercer*, 26 F. Supp.3d at 440; 28 C.F.R. §§ 35.134.

75. To establish a claim for retaliation, Plaintiff must prove: "(1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

**A.      Plaintiff Engaged in a "Protected Activity" Pursuant to the ADA When He Requested the Accommodation.**

76. First, Plaintiff engaged in conduct that readily rises to the level of "protected activities" sufficient to satisfy the ADA. It is well-recognized that requesting an accommodation for a disability constitutes a "protected activity" pursuant to the ADA. *Orzech v. Muhlenberg Township*, No. 5:18-cv-03938, 2019 BL 453570, at *6 (E.D. Pa. Nov. 22, 2019) citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190 (3d Cir. 2003) and *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010).

77. As stated previously, after Defendant revoked Plaintiff's Accommodation, Plaintiff requested his rights and that his accommodation be it reinstated by Defendant.

**B.      Plaintiff Experienced an "Adverse Action" after He Engaged in the Protected Activities of Requesting an Accommodation.**

78. The Third Circuit had held that an "adverse employment action" is an action taken by an employer which is "serious and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 765 (3d Cir. 2004). Further, it is recognized that "suspension without pay is an adverse employment action". *Keytanjian v. County of Chester*, No. 17-530, 2018 BL 49870, at *4 (E.D. Pa. Feb. 14, 2018) citing *Jones v. SEPTA*, 796 F.3d 323 (3d Cir. 2015)

79.    Defendant refused to accommodate Plaintiff's Disabilities and terminated Plaintiff in retaliation for asserting his rights under the ADA and the PHRA.

**C.     There was a causal connection between Plaintiff's protected activity and Defendant's adverse action.**

80.    Very simply, Plaintiff requested Defendant accommodate his Disabilities in August of 2021, Defendant refused to do so, and in December of 2022, Defendant terminated Plaintiff's employment.

81.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only a tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**DISCRIMINATION ON THE BASIS OF RACE**
**IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000, *et seq.***

82.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

83.    "In order to establish a *prima facie* case of intentional racial discrimination, an employee must show that: (1) they are a member of a protected group; (2) they are qualified for the position at issue; (3) they were discharged or suffered some adverse employment action by the employer; and (4) they were treated less favorably than other similarly situated employees outside the protected group." *In re Tribune Media Co*., 902 F.3d 384, 402 (3d Cir. 2018) (internal citations and alterations omitted).

**A.    Plaintiff is a Member of a Protected Class on the Basis of His Race.**

84.    At all times relevant hereto, Plaintiff was a member of a protected class as Plaintiff is Hispanic and is therefore afforded protected status pursuant to Title VII and the PHRA.

**B.    Plaintiff was Qualified for the Position.**

85.    Plaintiff was qualified to perform the tasks and job duties of the various positions he held with Defendant, as buttressed by his long-term employment of fifteen plus years in various roles wherein he established a record of success.

**C.    Plaintiff Suffered an Adverse Employment Action in that His Employment was Terminated by Defendant.**

86.    Plaintiff was subjected to an adverse employment action in that he was terminated from his employment with Defendant.

**D.    Plaintiff was Treated Less Favorably Than Other Similarly Situated Employees Outside the Protected Group.**

87.    Plaintiff was treated less favorably than other similarly situated employees outside the protected group by the treatment he received contrasted with Defendant's treatment of Mr. Foster in like circumstances.

88.     In discriminating against Plaintiff because of his race, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights and Defendant's actions warrant recovery of punitive damages.

89.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only a tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **REQUEST FOR RELIEF**

Plaintiff, Ricardo Vazquez, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, United States Steel Corporation, and prays for relief as follows:

1.  Declare and find that Defendant committed one or more of the following acts:

     i.   Violated the ADA in discriminating against Plaintiff on the basis of his Disabilities;

     ii.   Violated the ADA in failing to accommodation Plaintiff's Disabilities;

     iii.   Violated the ADA in retaliating against Plaintiff after he engaged in protected activity; and

     iv.   Violated Title VII in discriminating against Plaintiff on the basis of his race.

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award punitive damages to Plaintiff in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature;

4. Award equitable relief in form of back pay and front pay;

5. Award reasonable attorney fees and costs to Plaintiff incurred in the prosecution of this suit; and/or

6. Award pre-judgment and continuing interest as calculated by the Court.


**TRIAL BY JURY IS DEMANDED.**


Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**


Date: April 18, 2024                     By: */s/ Erik M. Yurkovich*
                                             Erik M. Yurkovich (Pa. I.D. No. 83432)

                                             The Workers' Rights Law Group, LLP
                                             Foster Plaza 10
                                             680 Andersen Drive, Suite 230
                                             Pittsburgh, PA 15220
                                             Telephone: 412.910.8057
                                             Fax: 412.910.7510
                                             erik@workersrightslawgroup.com

                                             *Counsel for Plaintiff, Ricardo Vazquez*

## **VERIFICATION**

I, Ricardo Vazquez, have read the foregoing Amended Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: _04 / 18 / 2024_

_____
Ricardo Vazquez